1

2

3

4

5

6
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8   VERNIE REED, JR.,

                    Plaintiff,          CASE NO. C13-5538 BHS

9   v.                                  ORDER DENYING PLAINTIFF'S
                                        MOTION FOR EXTENSION OF
10  CITY OF TACOMA, et al.,             TIME, GRANTING
                                        DEFENDANTS' MOTION TO
11                  Defendants.         STRIKE, GRANTING IN PART
                                        AND DENYING IN PART
12                                      DEFENDANTS' MOTION FOR
                                        SUMMARY JUDGMENT
13

14        This matter comes before the Court on Defendants City of Tacoma, Tacoma

15  Police Department, Bret Terwilliger, and Jane Doe Terwilliger's ("Defendants") motion

16  for summary judgment (Dkt. 21).  The Court has considered the pleadings filed in support

17  of and in opposition to the motion and the remainder of the file and hereby grants the

18  motion in part and denies it in part for the reasons stated herein.

19                        **I. PROCEDURAL HISTORY**

20        On July 1, 2013, Plaintiff Vernie Reed, Jr. ("Reed") filed a 42 U.S.C. § 1983 suit

21  against Defendants.  Dkt. 1.  Reed alleges that Officer Bret Terwilliger ("Officer

22  Terwilliger") violated his Fourth Amendment rights by using excessive deadly force.  *Id.*

1   at 5.  Reed also alleges that the City of Tacoma ("City") and Tacoma Police Department

2   ("Department") failed to adequately train Officer Terwilliger.  *Id.* at 6–7.  Finally, Reed

3   alleges state law claims for negligence, negligent infliction of emotional distress, assault,

4   and battery.[1]  *Id.* at 8–10.

5       On August 7, 2014, Defendants moved for summary judgment.  Dkt. 21.  On

6   August 20, 2014, Reed filed a motion for extension of time to respond.  Dkt. 26.  On

7   August 25, 2014, Reed responded.[2]  Dkt. 27.  On August 28, 2014, Defendants replied

8   and included a motion to strike Exhibit D from Reed's response.  Dkt. 29.

9                       **II. FACTUAL BACKGROUND**

10      On the evening of October 8, 2012, Officer Terwilliger and Officer Jennifer Corn

11  ("Officer Corn") noticed a car with a loud exhaust.  Dkt. 28, Declaration of Thomas S.

12  Olmstead ("Olmstead Dec."), Ex. A at 10.  When the officers checked the car's license

13  plate, a warrant came up on the owner of the car.  *Id.*

14      The officers initiated a traffic stop using their patrol car's emergency lights.  *Id.* at

15  12.  Officer Terwilliger exited the patrol car and approached the driver's side of the

16  stopped car.  *Id.* at 13.  Officer Corn approached the passenger side of the car.  Olmstead

17  Dec., Ex. B at 9.  Reed—the driver of the car—held his left hand out the window with his

18  identification card.  *Id.* at 10.  The engine was idling.  Dkt. 23, Declaration of Bret

19  Terwilliger ("Terwilliger Dec.") ¶ 9.

20  ────────────────

21      [1] Reed has stipulated to the dismissal of his due process and takings claims, as well as
    any causes of action under the Eighth Amendment.  *See* Dkt. 14.

22      [2] Reed timely responded to Defendants' motion to dismiss.  As such, Reed's motion for
    extension of time (Dkt. 26) is moot.

1  Officer Terwilliger told Reed to turn the engine off.  Olmstead Dec., Ex. A at 13.

2  Reed said he could not turn the engine off because he would not be able to turn it back

3  on.  *Id.*  Officer Terwilliger took Reed's identification card from him.  Terwilliger Dec.

4  ¶ 10.  Reed's name did not match the name on the warrant.  Olmstead Dec., Ex. B at 22.

5  Officer Terwilliger again told Reed to turn the engine off.  Terwilliger Dec. ¶ 10.

6  Officer Corn heard Officer Terwilliger tell Reed to get out of the car.  Dkt. 24,

7  Declaration of Jennifer Corn ("Corn Dec.") ¶ 8.

8  Officer Terwilliger saw a plastic bag containing a crystalline substance on Reed's

9  lap.  Olmstead Dec., Ex. A at 14.  Officer Terwilliger believed that the bag contained

10  crystal methamphetamine.  Terwilliger Dec. ¶ 11.

11  Both officers saw Reed reach his hand into his pants.  *Id.*; Corn Dec. ¶ 8.

12  Officer Terwilliger ordered Reed to show his hands.  Terwilliger Dec. ¶ 12.  Officer

13  Terwilliger opened the car door.  *Id.*  According to Officer Terwilliger, Reed grabbed the

14  bag and turned the other way.  Olmstead Dec., Ex. A at 15.  Officer Terwilliger thought

15  Reed put the substance in his mouth, so Officer Terwilliger tried to turn Reed's head

16  towards him.  *Id.*  Officer Terwilliger was concerned that Reed would destroy evidence.

17  *Id.*

18  Officer Corn turned to run around the rear of the car.  Corn Dec. ¶ 8.  As she

19  began to move back, Officer Corn saw Reed shove an object that appeared to be narcotics

20  in his mouth.  *Id.*

21

22

Reed says that he did not have a bag of drugs.  Dkt. 22, Affidavit of Jean P. Homan ("Homan Aff."), Ex. 5 at 9.  Reed also says that he did not attempt to hide anything from Officer Terwilliger.  *Id.*  As Reed explains in his deposition:

> [Officer Terwilliger] did not ask me another question.  The driver's door came open and with his left arm, [Officer Terwilliger] grabbed me around the front of my neck.  With his right arm, he pushed my head down in the direction of the passenger seat and he struck me several times . . . .

*Id.* at 5.

As she made her way around the car, Officer Corn heard two or three punches being thrown.  Corn Dec. ¶ 9.  Officer Corn does not know who was hitting who.  Olmstead Dec., Ex. B at 13.  Officer Terwilliger does not remember punching Reed in the head.  Olmstead Dec., Ex. A at 24.  Officer Terwilliger says that Reed struck his arms and tried to push his arms away.  Terwilliger Dec. ¶ 15.

Officer Corn heard Officer Terwilliger say "F'ing head off."  Olmstead Dec., Ex. B at 15.  Officer Terwilliger remembers saying that he would "fucking shoot [Reed]."  Olmstead Dec., Ex. A at 24.  According to Reed, Officer Terwilliger said "If you move, I'll blow your fucking brains out."  Homan Aff., Ex. 5 at 5.

Reed started revving the engine.  Olmstead Dec., Ex. A at 20.  Officer Terwilliger's body was mostly inside the car as he struggled to control Reed's hands.  *Id.* at 19–20.  Officer Corn attempted to gain control of Reed's legs.  Olmstead Dec., Ex. B at 13–14.

Reed reached down for the gear shift.  Olmstead Dec., Ex. A at 20.  Officer Terwilliger was still partially inside the car.  *Id.*  Officer Terwilliger yelled "Let me out"

1   several times.  Terwilliger Dec. ¶ 17.  Officer Corn backed a few feet away from the car

2   and called for a backup unit.  Olmstead Dec., Ex. B at 16–17.

3        Reed shifted the car into gear and the car jolted forward.  Terwilliger Dec. ¶ 18.

4   Officer Terwilliger was able to get out of the car.  Olmstead Dec., Ex. A at 22.

5   According to Officer Terwilliger, the door jamb bumped him as he was getting out.  *Id.*

6   Reed denies that a portion of the car hit Officer Terwilliger.  Homan Aff., Ex. 5 at 14.

7        The tires were squealing and moving quickly.  Olmstead Dec., Ex. A at 46.  Reed

8   started driving down the street away from the officers.  *Id.* at 29.  Reed was not driving in

9   a direction where another car would be endangered.  *Id.* at 30.

10        Officer Terwilliger drew his gun and fired six rounds into the driver's area of the

11   car.  *Id.* at 23, 26.  Officer Terwilliger intended to use force that he knew could possibly

12   kill Reed.  *Id.* at 27.  Officer Terwilliger did not see a knife or gun in Reed's possession.

13   *Id.* at 26.

14        When he started shooting, Officer Terwilliger thought he "could possibly be

15   pulled down or drug with [Reed's] vehicle."  *Id.* at 30.  As Officer Terwilliger explains in

16   his deposition: "I believe[d] there was equipment of mine stuck in the vehicle as [Reed]

17   was leaving."  *Id.* at 29–30.  "At some point I remember my microphone from my car, I

18   couldn't see where it was in the car, in [Reed's] car . . . I thought I could be pulled by it."

19   *Id.* at 52.

20        In his declaration, Officer Terwilliger further explains:

21   The microphone cord from my radio, which is attached to my
     uniform . . . apparently came unclipped during the struggle with Mr. Reed,
22   and was stuck on something inside his car.  The cord was stretching as the

car continued to move forward.  While my body was now outside the vehicle, my equipment appeared to be caught on something inside. . . . This was all happening very rapidly . . . . I believed that [Reed] was trying to leave with me caught in the car.

At this point I was fearful that I was going to be dragged with the vehicle as it sped away and be seriously injured or killed.  Even though I had managed to pull my body out of the car, my radio cord was still inside Mr. Reed's car and I was afraid that I could be pulled along because by radio is secured to my uniform.  I was fearful not only for my own safety but for the safety of other officers as well as members of the public.  Mr. Reed was demonstrating a willingness to injure or possibly even kill a law enforcement officer in order to escape.

I drew my duty firearm and fired six rounds into the driver's area of the vehicle.  I saw the back window of the [car] shatter.  The car briefly slowed.  It appeared my radio cord was no longer stuck as it was no longer tense and stretching so it appeared I was free of the car.  After briefly slowing, the car continued to drive off at an accelerated speed.  I did not fire any more shots at that point . . . .

Terwilliger Dec. ¶¶ 18–20.

Officer Corn describes the situation as follows:

This was all happening very, very fast.

Officer Terwilliger was still partially inside the car.  [Reed] started to drive off with Officer Terwilliger still inside, and I had the impression that maybe his duty belt was caught on the frame.  Just then shots were fired toward the back of the car, about three or four rounds.  I recall hearing the sound of one of the car windows being blown out.  I don't recall exactly where Officer Terwilliger was at the time each shot was fired, as I was trying to keep my focus on [Reed], but obviously my partner was able to get free of the car, and the car drove off.

I called for priority backup on my radio.  I was concerned for my partner.  He was pale, and his shoulders were slumped over.  His radio was off, hanging down off his uniform.

Corn Dec. ¶¶ 11–13.

Officer Terwilliger's radio is buttoned to his uniform.  Olmstead Dec., Ex. A at 56.  Officer Terwilliger weighs 190 pounds.  *Id.* at 57.

1    Reed was apprehended a few days later.  Homan Aff., Ex. 1.  He did not suffer any

2    injuries from the gunfire.  *Id.*

3    Reed was charged with third-degree assault for hitting Officer Terwilliger with his

4    door jamb as he attempted to leave the scene.  Homan Aff., Ex. 2.  Reed later pled guilty

5    to attempted assault in the third degree.  Homan Aff., Ex. 4.

6    On September 11, 2013, the Department reprimanded Officer Terwilliger for

7    violating department policy.  Olmstead Dec., Ex. C.  The Department issued an intra-

8    departmental memorandum, which states:

9       On October 8th, 2012, [Officer Terwilliger was] involved in an on-
        duty shooting.  During this shooting, [Officer Terwilliger] fired six rounds

10      at a suspect fleeing in a vehicle.  This shooting had two distinct parts.  The
        first part involved [Officer Terwilliger] firing when [he] perceived [his]

11      microphone cord was lodged in the vehicle as the suspect attempted to
        drive away.  The second part was when [Officer Terwilliger] became free

12      of the vehicle and continued to fire [his] weapon at the fleeing vehicle.
        [Officer Terwilliger was] not justified in continuing to shoot when [he] was

13      no longer in fear for [his] own life.

14   *Id.*

15   Officer Terwilliger does not recall receiving training on exigent circumstances that

16   would permit him to shoot at a moving vehicle.  Olmstead Dec., Ex. A at 35.

17                            **III. DISCUSSION**

18   **A.    Defendants' Motion to Strike**

19   Defendants move to strike Exhibit D from Reed's response.  Dkt. 29.  Exhibit D is

20   an excerpt of Reed's answers to interrogatories propounded by Defendants.  *See*

21   Olmstead Dec., Ex. D.  Exhibit D is attached to the declaration of Reed's attorney,

22

ORDER - 7

1  Thomas Olmstead ("Olmstead").  *See id.*  Defendants argue that Exhibit D is

2  inadmissible hearsay.  Dkt. 29 at 3.

3      Interrogatory answers may be considered as evidence during summary judgment.

4  Fed. R. Civ. P. 56(c).  To constitute competent summary judgment evidence,

5  interrogatory answers must satisfy the requirements of Rule 56.  *See id.*  Under Rule 56,

6  affidavits and declarations "must be made on personal knowledge, set out facts that

7  would be admissible in evidence, and show that the affiant or declarant is competent to

8  testify to the matters stated."  *Id.*

9      Exhibit D is an excerpt of Reed's interrogatory answers.  There is no evidence that

10  these answers were made by Reed and signed under oath.  Although the answers are

11  attached to Olmstead's declaration, there is no evidence that the answers are based on

12  Olmstead's personal knowledge.  Accordingly, it would be improper to include Exhibit D

13  as evidence on summary judgment.

14      Even if the Court did not strike Exhibit D, Reed's answers are not inconsistent

15  with Officer Terwilliger's testimony about the shooting.  Thus, Reed's interrogatory

16  answers do not create a material question of fact regarding Officer Terwilliger's use of

17  deadly force.

18      The Court grants Defendants' motion to strike Exhibit D.

19  **B.    Defendants' Motion for Summary Judgment**

20      Defendants move for summary judgment on several grounds.  First, Defendants

21  argue that Reed's excessive force claim is barred by both *Heck v. Humphrey*, 512 U.S.

22  477 (1994), and the doctrine of judicial estoppel.  Dkt. 21 at 8, 12.  Additionally,

1   Defendants argue that Officer Terwilliger is entitled to qualified immunity. *Id.* at 18.

2   Defendants further argue that Reed has not produced any evidence to support his section

3   1983 claims against the City. *Id.* at 21. Finally, Defendants argue that Reed's negligence

4   claim is barred by the public duty doctrine, and his negligent infliction of emotional

5   distress claim fails because of the absence of a duty and a diagnosable medical condition.

6   *Id.* at 26, 28.

7       **1.    Standard**

8       Summary judgment is proper only if the pleadings, the discovery and disclosure

9   materials on file, and any affidavits show that there is no genuine issue as to any material

10  fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

11  The moving party is entitled to judgment as a matter of law when the nonmoving party

12  fails to make a sufficient showing on an essential element of a claim in the case on which

13  the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

14  323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

15  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

16  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

17  present specific, significant probative evidence, not simply "some metaphysical doubt").

18  *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

19  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

20  jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

21  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

22  626, 630 (9th Cir. 1987).

1   The determination of the existence of a material fact is often a close question. The

2   Court must consider the substantive evidentiary burden that the nonmoving party must

3   meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

4   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

5   issues of controversy in favor of the nonmoving party only when the facts specifically

6   attested by that party contradict facts specifically attested by the moving party. The

7   nonmoving party may not merely state that it will discredit the moving party's evidence

8   at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

9   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

10  nonspecific statements in affidavits are not sufficient, and missing facts will not be

11  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

12  **2.      Section 1983 Claims**

13  Section 1983 is a procedural device for enforcing constitutional provisions and

14  federal statutes; the section does not create or afford substantive rights. *Crumpton v.*

15  *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under section 1983,

16  a plaintiff must demonstrate that (l) the conduct complained of was committed by a

17  person acting under color of state law and that (2) the conduct deprived a person of a

18  right, privilege, or immunity secured by the Constitution or by the laws of the United

19  States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*

20  *Daniels v. Williams*, 474 U.S. 327 (1986).

21

22

1    In this case, Reed alleges that Officer Terwilliger violated his Fourth Amendment

2  rights by using excessive deadly force.  Dkt. 1 at 5.  Reed also alleges that the City and

3  the Department failed to adequately train and supervise Officer Terwilliger.  *Id.* at 6–7.

4             **a.     Heck v. Humphrey**

5    Defendants argue that *Heck* bars Reed's excessive force claim because his claim

6  necessarily implies the invalidity of his conviction for attempting to assault an officer.

7  Dkt. 21 at 8.  In response, Reed argues that Officer Terwilliger used excessive force after

8  Reed had committed the acts on which his conviction was based.  Dkt. 27 at 3.  Reed

9  therefore argues that a verdict in his favor would not imply that his conviction was

10  invalid.  *Id.*

11    In *Heck*, the United States Supreme Court held that a section 1983 claim cannot

12  proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity

13  of his conviction or sentence."  512 U.S. at 487.  "*Heck*, in other words, says if a criminal

14  conviction arising out of the same facts stands and is fundamentally inconsistent with the

15  unlawful behavior for which section 1983 damages are sought, the 1983 action must be

16  dismissed."  *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).  *Heck*, however, does

17  not bar section 1983 claims arising from events that occurred before or after the conduct

18  for which the plaintiff was convicted.  *Smith v. City of Hemet*, 394 F.3d 689, 695–96 (9th

19  Cir. 2005) (en banc).

20    In this case, *Heck* does not bar Reed's excessive force claim.  Reed was charged

21  with third-degree assault for striking Officer Terwilliger with his car door jamb as he

22  attempted to leave the scene.  Reed later pled guilty to attempted assault.  Reed's

1  excessive force claim, however, concerns Officer Terwilliger's conduct after the assault

2  had already occurred.  Specifically, Reed alleges that Officer Terwilliger used excessive

3  deadly force by shooting at Reed as he drove away.  Reed's claim therefore does not

4  necessarily imply the invalidity of his attempted assault conviction.  The Court denies

5  Defendants' motion for summary judgment on this issue.

6                    **b.    Judicial Estoppel**

7         Defendants also argue that Reed's excessive force claim is barred by the doctrine

8  of judicial estoppel because his claim is inconsistent with his guilty plea for attempted

9  assault.  Dkt. 21 at 12.  Reed argues that there is no inconsistency.  Dkt. 27 at 4–5.

10        Judicial estoppel "is an equitable doctrine invoked by a court at its discretion."

11 *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  In determining whether to apply

12 the doctrine, courts generally consider "(1) whether a party's later position is 'clearly

13 inconsistent' with its original position; (2) whether the party has successfully persuaded

14 the court of the earlier position[;] and (3) whether allowing the inconsistent position

15 would allow the party to 'derive an unfair advantage or impose an unfair detriment on the

16 opposing party.'"  *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting

17 *New Hampshire*, 532 U.S. at 750–51).

18        Judicial estoppel does not bar Reed's excessive force claim.  Reed pled guilty to

19 attempted assault.  It is not inconsistent for Reed to claim that Officer Terwilliger used

20 excessive force after the assault took place.  The Court denies Defendants' motion on this

21 issue.

22

1                 **c.**      **Qualified Immunity**

2        Defendants argue that Officer Terwilliger is entitled to qualified immunity because

3    a reasonable officer would have thought the use of force was reasonable and necessary.

4    Dkt. 21 at 18.  In response, Reed argues that Officer Terwilliger's actions were

5    unreasonable.  Dkt. 27 at 5.

6        Qualified immunity shields government officials from civil liability unless a

7    plaintiff demonstrates: "(1) that the official violated a statutory or constitutional right,

8    and (2) that the right was 'clearly established' at the time of the challenged conduct."

9    *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  The Court has discretion to decide

10   "which of the two prongs of the qualified immunity analysis should be addressed first in

11   light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S.

12   223, 236 (2009).

13              **i.**      **Constitutional Right**

14       Reed alleges that Officer Terwilliger violated his Fourth Amendment rights by

15   using excessive deadly force.  Dkt. 1 at 5.  "Under the Fourth Amendment, officers may

16   only use such force as is 'objectively reasonable' under the circumstances."  *Jackson v.*

17   *City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (citing *Graham v. Conner*, 490 U.S.

18   386, 397 (1989)).  "In assessing reasonableness, the court should give 'careful attention

19   to the facts and circumstances of each particular case, including the severity of the crime

20   at issue, whether the suspect poses an immediate threat to the safety of the officers or

21   others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

22   *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at

1   396).  Additionally, the reasonableness of an officer's use of force "must be judged from

2   the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

3   hindsight."  *Graham*, 490 U.S. at 396.  "[P]olice officers are often forced to make split-

4   second judgments—in circumstances that are tense, uncertain, and rapidly evolving—

5   about the amount of force that is necessary in a particular situation."  *Id.* at 397.

6         "The use of deadly force to prevent the escape of all felony suspects . . . is

7   constitutionally unreasonable."  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  An officer,

8   however, may constitutionally use deadly force if "the officer has probable cause to

9   believe that the suspect poses a significant threat of death or serious physical injury to the

10  officer or others."  *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007).

11        At the outset, the Court finds that Officer Terwilliger used deadly force and

12  intended to do so.  Firing a gun at the driver of a car is deadly force.  Officer Terwilliger

13  also testified that he intended to use force that he knew could possibly kill Reed.

14  Olmstead Dec., Ex. A at 27.

15        With regard to reasonableness, Reed fails to meet his burden in this case.  Viewed

16  in the light most favorable to Reed, the evidence establishes that Reed posed a threat of

17  serious physical harm to Officer Terwilliger.  When he started shooting, Officer

18  Terwilliger thought he could be pulled down or dragged by Reed's car.  *Id.* at 30.  Even

19  though Officer Terwilliger's body was outside Reed's car, Officer Terwilliger's

20  microphone cord—which was secured to his uniform—was still inside Reed's car.

21  Terwilliger Dec. ¶ 18.  The cord was stretching as Reed's car moved forward.  *Id.*  Reed

22  was attempting to accelerate away from the officers.  Homan Aff., Ex. 5 at 13.  As a

1  result, Officer Terwilliger was "fearful that [he] was going to be dragged with the vehicle

2  as it sped away and be seriously injured or killed."  Terwilliger Dec. ¶ 19.  Officer

3  Terwilliger further stated that he was "fearful not only for [his] own safety but for the

4  safety of other officers as well as members of the public.  Mr. Reed was demonstrating a

5  willingness to injure or possibly even kill a law enforcement officer in order to escape."

6  *Id.*

7       There is an absence of evidence to contest these facts in the record.  Reed contends

8  that "both officers agreed in their deposition testimony that Mr. Reed posed no danger to

9  either officer as he drove away."[3]  Dkt. 27 at 5.  At most, the officers stated that, at some

10 point, Reed posed no threat to either officer as he drove away.  Based on Officer

11 Terwilliger's declaration, that point was when he was free of the car, the back window

12 had been shattered, and he had stopped shooting.  *See* Terwilliger Dec. ¶ 20.  Reed has

13 failed to establish any material question of fact that Officer Terwilliger's use of deadly

14 force was unreasonable.

15       Reed argues that Officer Terwilliger's use of force was unreasonable based on the

16 Department's reprimand of Officer Terwilliger.  Dkt. 27 at 5.  The Court's inquiry is not

17 whether Officer Terwilliger violated a departmental policy.  *Case v. Kitsap Cnty.*

18 *Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001).  A violation of a police department

19 policy is insufficient to establish liability under section 1983.  *See id.*; *see also Davis v.*

20 *Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not

21 _____

22       [3] Reed fails to provide citations to support this assertion.

ORDER - 15

1  lose their qualified immunity merely because their conduct violates some statutory or

2  administrative provision.").  Rather, the Court's inquiry is whether Officer Terwilliger

3  violated Reed's constitutional rights.  *Case*, 249 F.3d at 929.  Reed's argument that

4  Officer Terwilliger violated the Department's policy is therefore not relevant to the

5  Court's qualified immunity analysis.  *See Backlund v. Barnhart*, 778 F.2d 1386, 1390 n.5

6  (9th Cir. 1985).

7         Although Reed does not present this argument, the Department concluded that the

8  incident involved two separate parts.  The Department  describes the shooting as follows:

9        The first part involved [Officer Terwilliger] firing when [he] perceived
          [his] microphone cord was lodged in the vehicle as the suspect attempted to
10       drive away.  The second part was when [Officer Terwilliger] became free
          of the vehicle and continued to fire [his] weapon at the fleeing vehicle.

11 Olmstead Dec., Ex. C.  The evidence in the record, however, establishes that in a rapidly

12 evolving situation Officer Terwilliger fired six rounds, became free of the car, and

13 stopped shooting.  *See* Terwilliger Dec. ¶ 20 ("I drew my duty firearm and fired six

14 rounds . . . .  It appeared my radio cord was no longer stuck as it was no longer tense and

15 stretching so it appeared I was free of the car. . . . I did not fire any more shots at that

16 point . . . .").  Reed does not point to any facts in the record that contradict Officer

17 Terwilliger's account of the shooting.  In this factual scenario, firing multiple shots was

18 constitutionally reasonable.  *See Wilkinson*, 610 F.3d at 552 ("[The officer] did not shoot

19 mindlessly, but responded to the situation by ceasing fire after he perceived that

20 the . . . threat had been eliminated.").

21

22

ORDER - 16

1    In assessing the reasonableness of Officer Terwilliger's use of deadly force, the

2    Court applies the three-part analysis set out by the Supreme Court in *Graham* and

3    followed by the Ninth Circuit in *Wilkinson*.  From the objective perspective of a

4    reasonable police officer, Reed was committing the crime of possession of a controlled

5    substance, assaulting a police officer, and resisting arrest in a manner that was

6    endangering the life of Officer Terwilliger.  Taken together, this was a very serious and

7    life threatening situation.  Little is said in the pleadings of the danger Reed's conduct

8    created to the safety of Officer Corn.  At one point, Officer Corn was also attempting to

9    get control of Reed.  Olmstead Dec., Ex. B. at 13–14.  Officer Corn reached around

10   Officer Terwilliger's legs to grab Reed's legs while Reed was actively resisting and

11   preparing to drive away.  *Id.*  Officer Terwilliger yelled "Let me out" several times.

12   Terwilliger Dec. ¶ 17.  Reed's conduct posed an immediate and ongoing threat to the

13   officers.  This threat continued when Officer Terwilliger's microphone cord was caught

14   in the car as Reed drove away.

15        Under the circumstances in this case, Officer Terwilliger reasonably perceived that

16   Reed's car posed an immediate threat to his physical safety.  Officer Terwilliger was

17   faced with a rapidly evolving situation.  *See* Terwilliger Dec. ¶ 18; Corn Dec. ¶ 11.

18   Indeed, the situation quickly turned from a traffic stop "to one in which the driver of a

19   moving vehicle, ignoring police commands, attempted to accelerate within close quarters

20   of two officers on foot."  *Wilkinson*, 610 F.3d at 551.  Moreover, there is no evidence that

21   Officer Terwilliger shot mindlessly at Reed.  *See id.* at 552.  Officer Terwilliger's use of

22   deadly force was therefore constitutionally reasonable under the Fourth Amendment.

1           **ii.**     **Clearly Established**

2       Because the Court concludes that Officer Terwilliger did not violate a

3 constitutional right, the Court need not address whether the right was clearly established.

4 *See Saucier*, 533 U.S. at 201.

5       Officer Terwilliger is entitled to qualified immunity on Reed's excessive force

6 claim.  The Court grants Defendants' motion on this issue.

7           **d.**     **Municipal Liability**

8       Defendants argue that Reed has failed to produce any evidence to support his

9 section 1983 claims against the City.  Dkt. 21 at 21.  Reed argues that there is a material

10 issue of fact as to whether Reed has met his burden.  Dkt. 27 at 6.

11       As a municipality, the City may be held liable under section 1983 if the execution

12 of its policy, custom, or practice caused a municipal employee to violate an individual's

13 constitutional rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).  The

14 City may also be held liable for inadequate police training, but "only where the failure to

15 train amounts to deliberate indifference to the rights of persons with whom the police

16 come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Deliberate

17 indifference "occurs when the need for more or different action is so obvious, and the

18 inadequacy of the current procedure so likely to result in the violation of constitutional

19 rights, that the policymakers . . . can reasonably be said to have been deliberately

20 indifferent to the need."  *Oviatt v. Pearce*, 954 F.2d 1470, 1477–78 (9th Cir. 1992)

21 (citations and internal quotation marks omitted).

22

1    In this case, the City and the Department cannot be held liable under section 1983

2    because no constitutional violation occurred.  As discussed above, Officer Terwilliger's

3    use of deadly force was constitutionally reasonable under the Fourth Amendment.  Thus,

4    there is "no basis for finding the officer[] inadequately trained." *Scott v. Henrich*, 39

5    F.3d 912, 916 (9th Cir. 1994); *see also Long*, 511 F.3d at 907 ("If no constitutional

6    violation occurred, the municipality cannot be held liable . . . .").  The Court grants

7    Defendants' motion on Reed's section 1983 claims against the City.

8       **3.    State Law Claims**

9       In addition to his section 1983 claims, Reed alleges state law claims for

10   negligence, negligent infliction of emotional distress, assault, and battery.  Dkt. 1 at 8–10.

11          **a.    Negligence**

12       Defendants argue that Reed's negligence claim is barred by the public duty

13   doctrine.  Dkt. 21 at 26.  In response, Reed argues that the public duty doctrine does not

14   apply because there has been a legislative waiver.  Dkt. 27 at 6.  Reed also argues that

15   there is "no public duty to shoot an unarmed citizen who is driving away from the scene

16   where he has been assaulted." *Id.*

17       The threshold determination in a negligence action is whether the defendant owes

18   a duty of care to the plaintiff. *Taylor v. Stevens Cnty.*, 111 Wn.2d 159, 163 (1988).

19   "Under the public duty doctrine, no liability may be imposed for a public official's

20   negligent conduct unless it is shown that the duty breached was owed to the injured

21   person as an individual and was not merely the breach of an obligation owed to the public

22   in general (*i.e.*, a duty to all is a duty to no one)." *Id.* (citations and internal quotation

1  marks omitted).  In Washington, the duties owed by police officers "are owed to the

2  public at large and are unenforceable as to individual members of the public."

3  *Chambers-Castanes v. King Cnty.*, 100 Wn.2d 275, 284 (1983).

4          Washington courts have recognized four exceptions to the public duty doctrine:

5  (1) legislative intent; (2) failure to enforce; (3) rescue doctrine; and (4) special

6  relationship.  *Bailey v. Town of Forks*, 108 Wn.2d 262, 268 (1988).  "If one of these

7  exceptions applies, the government will be held as a matter of law to owe a duty to the

8  individual plaintiff."  *Cummins v. Lewis Cnty.*, 156 Wn.2d 844, 853 (2006).

9          Reed has failed to establish that any of the four exceptions apply in this case.

10  Reed argues that Defendants should be held liable for their tortuous conduct under RCW

11  4.96.010.  While RCW 4.96.010 waives municipal sovereign immunity, it "was not

12  intended to create new duties where none existed before."  *J&B Dev. Co. v. King Cnty.*,

13  100 Wn.2d 299, 305 (1983), *rev'd on other grounds by Meaney v. Dodd*, 111 Wn.2d 174

14  (1988).  Reed does not point to any other legislative enactment that establishes an intent

15  to protect Reed.  *See Bailey*, 108 Wn.2d at 268.  Moreover, Reed does not present any

16  evidence suggesting that the other exceptions apply.  The Court grants Defendants'

17  motion on Reed's negligence claim.

18                    **b.    Negligent Infliction of Emotional Distress**

19          Defendants argue that Reed's negligent infliction of emotional distress claim

20  should be dismissed because Defendants did not owe a duty to Reed.  Dkt. 21 at 28.

21  Defendants also argue that Reed has not presented medical evidence of a diagnosable

22

emotional disorder.  *Id.* at 29.  In response, Reed states that "Dr. Boltwood will provide a declaration as to the damages that [he] suffered with respect to PTSD."  Dkt. 27 at 6–7.

In Washington, the elements of a negligent infliction of emotional distress claim are (1) duty, (2) breach, (3) proximate cause, and (4) damages or injury.  *Snyder v. Medical Serv. Corp.*, 145 Wn.2d 233, 243 (2001).  A plaintiff must also demonstrate objective symptoms of emotional injury.  *Hegel v. McMahon*, 136 Wn.2d 122, 132 (1998).  To satisfy the objective symptom requirement, a plaintiff must provide medical evidence of a diagnosable emotional disorder.  *Id.* at 135.

As discussed above, Defendants did not owe a duty to Reed.  Moreover, Reed has not presented any medical evidence of a diagnosable emotional disorder.  Reed says that Dr. Boltwood will provide a declaration as to Reed's medical condition.  This declaration, however, has not been provided.  Reed may not merely state that he will provide evidence in the hopes that evidence supporting his claim can be developed at trial.  *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  The Court therefore grants Defendants' motion on Reed's negligent infliction of emotional distress claim.

c.      **Assault and Battery**

Defendants argue that Reed's assault and battery claims fail because Officer Terwilliger's use of force was objectively reasonable.  Dkt. 21 at 18 n.4.

In Washington, a police officer has qualified immunity from suit where the officer "(1) carries out a statutory duty, (2) according to procedures dictated to him by statute

1    and superiors, and (3) acts reasonably." *Staats v. Brown*, 139 Wn.2d 757, 778 (2000)

2    (quoting *Guffeey v. State*, 103 Wn.2d 144, 152 (1984)).

3           As discussed above, Officer Terwilliger's use of force was reasonable in this case.

4    The Court denies Defendants' motion on Reed's assault and battery claims.

5                                            **IV. ORDER**

6           Therefore, it is hereby **ORDERED** that Reed's motion for extension of time (Dkt.

7    26) is **DENIED** as moot.  Defendants' motion to strike (Dkt. 29) is **GRANTED**.

8    Defendants' motion for summary judgment (Dkt. 21) is **GRANTED** with respect to

9    Reed's section 1983 claims and state law claims.  The Clerk shall enter judgment for

10   Defendants and close this case.

11          Dated this 2nd day of October, 2014.

12

13          _____

14          BENJAMIN H. SETTLE
            United States District Judge

15

16

17

18

19

20

21

22